IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Susan J. Keeshan, M.D., ) | Civil Action No. 3:05-3601-MBS |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Eau Claire Cooperative Health Centers, ) | |
| Inc., and Stuart A. Hamilton, M.D., ) | |
| individually and Deborah Davis, M.D., ) | |
| individually, ) | |
| ) | |
| Defendants. ) | |
| ) | |

    Plaintiff Susan J. Keeshan ("Plaintiff") is a physician of Hispanic descent. She brings this action against her former employer, Defendant Eau Claire Cooperative Health Centers, Inc. ("Cooperative"), and Cooperative employees Dr. Stuart A. Hamilton ("Dr. Hamilton") and Dr. Deborah Davis ("Dr. Davis"), alleging claims of hostile work environment and retaliation in violation of Title VI and Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000d-e. Plaintiff also alleges violation of the South Carolina Wage Payment Act ("Wage Act"), S.C. Code Ann. § 41-10-10, et seq.; breach of contract accompanied by a fraudulent act; and various common law claims for retaliation in violation of South Carolina public policy.

    This matter is before the court on two motions for summary judgment. See Fed. R. Civ. P. 56. Drs. Hamilton and Davis filed a motion for summary judgment on October 12, 2006. Plaintiff responded on October 25, 2006, and Drs. Hamilton and Davis replied on November 6, 2006. The

Cooperative filed its own motion for summary judgment on November 6, 2006, and Plaintiff responded on December 1, 2006. The Cooperative replied on December 11, 2006.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., the matter was referred to United States Magistrate Judge Bristow Marchant for a Report and Recommendation. The Magistrate Judge filed a Report and Recommendation on July 11, 2007. The Magistrate Judge recommended that Drs. Hamilton and Davis's motion for summary judgment be granted as to all claims. The Magistrate Judge recommended that the Cooperative's motion for summary judgment be granted as to Plaintiff's Title VI claims, her Title VII hostile work environment claim, and her claims for violation of South Carolina public policy based on the exercise of her civil and political rights and for refusing to engage in illegal activity. The Magistrate Judge recommended that the Cooperative's motions for summary judgment be denied as to Plaintiff's Title VII retaliation claim, her Wage Act claim, and her claim for breach of contract accompanied by a fraudulent act. Plaintiff and the Cooperative filed objections to the Report and Recommendation on August 8, 2007. Drs. Hamilton and Davis responded to Plaintiff's objections to the Report and Recommendation on August 17, 2007.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. <u>Mathews v. Weber</u>, 423 U.S. 261, 270 (1976). The court is charged with making a <u>de novo</u> determination of any portion of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

I.  FACTS

The facts are set forth fully in the Magistrate Judge's Report. While in medical school, Plaintiff received a scholarship from the National Health Service Corps ("NHSC") stipulating that, after her residency, she spend four years at an NHSC-approved site providing medical services to traditionally under-served populations. (Pl. Dep. 29). The Cooperative is an NHSC-approved site. (Pl. Dep. 30). In 2000, Plaintiff entered into an employment contract with the Cooperative that was structured around automatically-renewable one-year terms, subject to termination by either party upon one hundred and twenty (120) days notice. (Thomas Aff. Ex. 1). Dr. Hamilton was the Cooperative's Chief Executive Officer in 2000. Dr. Hamilton is African-American.

Plaintiff started work as a staff physician in the Cooperative's OB/GYN division, and became Lead Physician for that division a few months into her employment. (Pl. Dep. 85-86). From 2000 to 2003, Plaintiff received good evaluations from Dr. Hamilton. (Hamilton Aff. Para. 9). In May 2003, Plaintiff asked for time off from work to have elective surgery. (Pl. Dep. 95-96). During an administrative meeting, on May 26, 2003, Dr. Hamilton asked Plaintiff if she could reschedule her surgery. Id. Shortly after the meeting, Plaintiff informed Dr. Hamilton by email that she thought he had addressed her inappropriately during the meeting. (Thomas Aff. Ex. 2). Plaintiff had surgery a few days after she sent this email. (Pl. Dep. 134). She was out of work for approximately eleven days. (Pl. Dep. 113). Plaintiff's relationship with Dr. Hamilton declined after the email. (Pl. Dep. 112-14; Hamilton Dep. 15-16).

Dr. Davis joined the Cooperative medical staff in June 2003. (Davis Dep. 21). Dr. Davis is African-American. On July 23, 2003, Dr. Hamilton announced that Dr. Davis would be the acting Women's Health Services Division Chief on an interim basis. (Thomas Aff. Ex. 3). Dr. Davis

assumed Plaintiff's administrative responsibilities. (Pl. Dep. 149-51). Dr. Davis's promotion did not affect Plaintiff's compensation or benefits. (Pl. Dep. 159). Plaintiff believed Dr. Davis treated her disrespectfully by calling her by her first name or her last name, rather than "Dr. Keeshan." (Pl. Dep 75-76, 151). Plaintiff also felt excluded by Dr. Davis's practice of referring to other African-Americans as "brothers" and "sisters." (Thomas Aff. Ex. 22).

In February 2004, Dr. Hamilton gave Plaintiff two written warnings. The first was for "entering into an illegal contract," based on Plaintiff's agreement with Dr. Davis to cover another physician's patients. (Pl. Dep. 76-78). This warning was later removed from Plaintiff's file. (Davis Dep. 108). The second was for Plaintiff's endorsement of an open letter sent to The State newspaper advocating tort reform legislation. (Thomas Aff. Ex. 5, 8). Three other physicians, including Dr. Davis, were also reprimanded for their endorsement of this letter. (Thomas Aff. Ex. 9-11).

On February 16, 2004, Plaintiff filed three formal grievances with the Cooperative, protesting her two written warnings and Dr. Davis's "unprofessional conduct." (Thomas Aff. Ex. 12-14). On February 19, 2004, the Cooperative responded to Plaintiff with notice that a grievance hearing would be held on February 20, 2004, to discuss her concerns. (Thomas Aff. Ex. 15, 16). Plaintiff did not receive notice of the meeting because the notice was put in her mailbox on her day off. Plaintiff was called before the meeting began, but was unable to attend because she was in a Radiology Technology Board Meeting at the time. (Pl. Dep. 192-193). She did not ask to reschedule the meeting, which went forward without her. (Pl. Dep. 195)

On February 20, 2004, the grievance committee denied Plaintiff's grievances regarding her written warnings, finding them to be without merit. (Thomas Aff. Ex. 17, 19). In response to Plaintiff's grievance concerning Dr. Davis, Dr. Conigliaro Jones, the Cooperative's Medical

4

Director, sent a memorandum to Cooperative employees stressing the importance of professional conduct and courtesy. (Thomas Aff. Ex. 17). Dr. Jones is African-American. Plaintiff claims she was satisfied with Dr. Jones's response. (Pl. Dep. 190).

On February 23, 2004, Plaintiff wrote a memorandum requesting compensation for productivity bonuses she claimed she was eligible for but had never received. (Thomas Aff. Ex. 21). On that same day, Plaintiff also submitted a "Religious and Racial Discrimination Complaint" to the Cooperative's Human Resources Representative, asserting that the Cooperative and Dr. Davis had subjected her to discrimination and harassment. (Thomas Aff. Ex. 22).

On February 23, 2004, Dr. Hamilton advised the Cooperative's Board of Plaintiff's complaints. (Thomas Aff. Ex. 23). Dr. Hamilton described Plaintiff as a "disaffected provider," and commented that her "contract ends July 5 [2004], and probably won't be renewed." Id.

On February 24, 2004, Plaintiff submitted a "response and request for grievance committee hearing," which demanded a hearing as provided in the Cooperative employment handbook. (Thomas Aff. Ex. 24). On February 25, 2004, Plaintiff and Dr. Hamilton "ran into each other" at a conference and briefly discussed her complaints and how they might be resolved. (Pl. Dep. 205, 209). On February 26, 2004, Dr. Hamilton provided Plaintiff with a proposed plan for addressing her grievances. (Thomas Aff. Ex. 25). Plaintiff had concerns about the plan and suggested several revisions. (Pl. Dep. 209-211). On March 5, 2004, Dr. Hamilton presented Plaintiff with a revised agreement. (Thomas Aff. Ex. 27). Plaintiff did not accept this agreement. Plaintiff understood, however, that whether she signed the agreement or not, the Cooperative was giving her 120 days' notice that her contract would not be renewed after July 2004. (Pl. Dep. 215).

Plaintiff filed a Charge of Discrimination with the South Carolina Human Affairs Commission

(SCHAC) on May 18, 2004, alleging that she had been discriminated against on the basis of her race and religion, and that she had been retaliated against for opposing unlawful employment practices. (Thomas Aff. Ex. 32). Plaintiff's employment with the Cooperative ended on July 17, 2004.

## II. DISCUSSION

### Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party bears the burden of proving that there are no facts from which a jury could draw inferences favorable to the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial. Id. Summary judgment should only be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. McKinney v. Bd. of Trustees of Mayland Cmty. College, 955 F.2d 924, 928 (4th Cir. 1992).

A. Title VII Hostile Work Environment[1]

Plaintiff contends that the Magistrate Judge erred in granting summary judgment in favor of

---

[1] Plaintiff asserts this claim only against the Cooperative.

6

the Cooperative on her hostile work environment claim. The court disagrees.

In order to prevail on a hostile work environment claim, Plaintiff must establish that the offending conduct was (1) unwelcome, (2) was based on her race, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer. Ocheltree v. Scollon Prod., Inc., 335 F.3d 325, 331 (4th Cir. 2003). The Cooperative challenged only the fourth prong of this test in its motion for summary judgment. The Magistrate Judge determined that the Cooperative was not subject to liability for Dr. Davis's alleged conduct because the Cooperative took remedial steps sufficient to prevent or stop any harassing behavior.

In determining that the Cooperative was not liable for Dr. Davis's conduct, the Magistrate Judge did not determine whether Dr. Davis was Plaintiff's "supervisor" or a mere coworker for the purposes of Plaintiff's Title VII claim. Plaintiff contends that the Magistrate Judge erred in not finding that Dr. Davis was her supervisor. The court agrees that an analysis of whether Dr. Davis was a supervisor is required. However, the court concludes that the end result remains the same.

If the plaintiff's supervisor contributes to the hostile work environment, the employer may face vicarious liability. Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998). In such an instance, the employer will be vicariously liable if any of the alleged harassing behavior arises to the level of a "tangible employment action." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998). If no "tangible employment action" has been taken, the employer may raise an affirmative defense. To invoke this defense, the employer typically must prove by a preponderance of the evidence that: (1) it exercised reasonable care to prevent and correct promptly any harassing behavior, and (2) the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities

7

provided by the employer or to avoid harm otherwise. Id. at 765.

In the employer liability context, an individual is not a "supervisor" solely because he or she possesses the authority to oversee or direct the operations of other employees. See Mikels v. City of Durham, 183 F.3d 323 (4th Cir. 1999). Rather, "the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment." Parkins v. Civil Constructors of Ill, Inc., 163 F.3d 1027, 1034 (7th Cir. 1998). In order to qualify as a supervisor, an individual must be entrusted with "the power to hire, fire, demote, promote, transfer, or discipline an employee." Id.

Plaintiff herself described Dr. Davis's job duties as consisting mainly of "supervising and transmitting information to administration and making sure policies are carried out that come down from administration." (Pl. Dep. 88-89). The record also reflects that Dr. Davis did not have the authority to hire new employees. (Davis Dep. 44). Nevertheless, Plaintiff contends that she was subject to Dr. Davis's "orders, supervision, and control." Plaintiff's Objections, 2. Plaintiff also points to a Cooperative document referring to Dr. Davis as Plaintiff's "supervisor." (Thomas Aff. Ex. 19). Furthermore, although Dr. Davis never conducted an evaluation of Plaintiff, she possessed the authority to evaluate Plaintiff's work performance. (Davis Dep. 43). Although the record does not conclusively establish that Dr. Davis had the power to affect the terms and conditions of Plaintiff's employment, the court will assume, for the purposes of summary judgment, that Dr. Davis was Plaintiff's supervisor under the Title VII analysis.[2]

---

[2] The Magistrate Judge determined that Plaintiff's separate disparate treatment claim for discriminatory replacement would be time-barred. The court agrees. Title VII requires employees to file charges of unlawful employment practice with a state or local authority "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). The limitations period runs from the time of the allegedly discriminatory personnel action, not from the discovery of the alleged discrimination. Jakubiak v. Perry, 101 F.3d 23, 26-27 (4th Cir. 1996).

In this case, the Cooperative had in place appropriate procedures by which Plaintiff could and did assert claims of a hostile work environment. The Cooperative took remedial action and Plaintiff admits that she had no more problems with Dr. Davis. "For purposes of imposing vicarious liability, a case presenting only an incipient hostile environment corrected by prompt remedial action should be distinct from a case in which a company was never called upon to react to a supervisor's protracted or extremely severe acts that created a hostile environment." Indest v. Freeman Decorating, Inc., 164 F.3d 258, 265 (5th Cir. 1999). In this context, "an employer that satisfies the first element of the affirmative defense and that promptly and adequately responds to a reported incident of sexual harassment . . . [will not be] liable for the harassment on the basis of an inability to satisfy the literal terms of the second element of the affirmative defense." Watkins v. Professional Sec. Bureau, Ltd., 201 F.3d 439, *5 n.16 (4th Cir. 1999) (unpublished table decision). As the Magistrate Judge properly found, the Cooperative is not liable because it took appropriate remedial action that resulted in the cessation of the complained-of conduct.

Even if Dr. Davis was not Plaintiff's supervisor, the result will be the same. If a supervisor did not take part in the alleged harassment, the employer will face liability only if it negligently

---

Plaintiff's administrative charge was received by the South Carolina Human Affairs Commission ("SCHAC") on May 18, 2004, precisely 300 days after Dr. Hamilton formally announced Dr. Davis' hiring, on July 23, 2003. However, the record shows that the alleged discriminatory action – the decision to replace Plaintiff with Dr. Davis – took place prior to the date it was formally announced. Plaintiff testified that she first learned Dr. Davis would be replacing her in "[l]ate June, early July." (Pl. Dep. 147).

In her objections to the Magistrate Judge's Report, Plaintiff points to a March 3, 2004 letter she wrote to the EEOC announcing that she would be instituting formal charges of discrimination. However, this too fails to meet the statutory deadline. Title VII requires that Plaintiffs who file complaints with the EEOC, as opposed to state or local agencies, must do so within 180 days of the discriminatory action. 42 U.S.C. § 2000e-5(e)(1).

failed to take prompt and adequate action to stop the alleged harassment. See Spicer v. Com. of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1999). As the Magistrate Judge found and as set forth hereinabove, the Cooperative took prompt remedial action to stop Dr. Davis's purportedly unwelcome comments. Plaintiff admits there were no further incidents after March 3, 2004. The Magistrate Judge correctly concluded that the Cooperative's efforts satisfied its duty of reasonable care. Plaintiff's objections are without merit.

B. Title VII Retaliation[3]

*1. Plaintiff's Exhaustion of Administrative Remedies*

In the Cooperative's motion for summary judgment, it argues that Plaintiff failed to mention the non-renewal of her contract in her charge of discrimination filed with SCHAC. The Magistrate Judge found that although Plaintiff did not expressly mention the non-renewal in her charge, she asserted that she was being "forced out" and had been informed by the Cooperative that she would only remain employed if she withdrew her grievances. The Magistrate Judge found these grounds sufficient to avoid summary judgment on the question of whether Plaintiff exhausted her administrative remedies. The Cooperative claims that the Magistrate Judge erred in linking Plaintiff's charges with the non-renewal of her contract. The court disagrees.

In its objections to the Magistrate Judge's Report, the Cooperative argues that Plaintiff never had any intention of renewing her employment contract, because she was planning on attending law school at the end of her term. (Pl. Dep. 219). The Cooperative argues that Plaintiff's concerns that she was being "forced out" can therefore only be construed to refer to her concerns that she may be

---

[3] Plaintiff asserts this claim only against the Cooperative.

terminated before the end of her contract. However, while Plaintiff's testimony indicates that she was considering entering law school in the Fall of 2004, it also indicates that she had considered "the possibility of continuing to work with [the Cooperative] on weekends and holidays and vacation." (Pl. Dep. 221-222). Therefore, the Magistrate Judge did not err in finding that Plaintiff's fears that she may be "forced out" by the Cooperative reasonably applied to the non-renewal of her contract.

### 2. *Plaintiff's Retaliation Claim*

The Cooperative did not address the merits of Plaintiff's Title VII Retaliation claim in its motion for summary judgment, and the Magistrate Judge therefore did not consider the issue. In its objections to the Magistrate Judge's Report, the Cooperative argues that the denial of summary judgment as to Plaintiff's retaliation claim is logically inconsistent with the Magistrate Judge's finding that the Cooperative exercised reasonable care in responding to Plaintiff's complaints about her treatment. Specifically, the Cooperative argues that if it "were inclined to retaliate against [Plaintiff] for complaining about race discrimination, it certainly would not have undertaken good faith efforts to investigate and remedy the conduct about which she complained." The Cooperative's Objections, 17. Defendants did not make this argument in their motions for summary judgment and the court declines to address it at this juncture.

C. Plaintiff's Wage Act Claim

Plaintiff has asserted a cause of action under the Wage Act against the Cooperative, Dr. Hamilton, and Dr. Davis for unpaid productivity bonuses. The Magistrate Judge found that: (1) Drs. Hamilton and Davis are entitled to summary judgment on this claim because Plaintiff has not shown they were sufficiently involved with calculating her productivity bonuses to be subject to liability under the Wage Act; and (2) unexplained discrepancies in the Cooperative's calculations of

Plaintiff's net production figures present a sufficient issue of fact so as to avoid summary judgment for the Cooperative. Plaintiff objects to the Magistrate Judge's recommendation of dismissal of the individual defendants. The Cooperative objects to the Magistrate Judge's finding that there are any discrepancies in its calculations. The court agrees with the Magistrate Judge on both findings.

Individual agents or officers of an employer who knowingly permit the employer to violate the Wage Act will be personally liable to employees injured under the Act. Dumas v. InfoSafe, 463 S.E.2d 641, 645 (S.C. Ct. App. 1995). The Magistrate Judge found that "Plaintiff has presented no evidence to show that either Davis or Hamilton were involved with, or had any responsibility for, calculating any productivity bonus for the Plaintiff, and indeed the only evidence before the Court reflects that they played no role in determining whether Plaintiff was entitled to any bonus." Report and Recommendation, 25. Plaintiff's only particular objection to this finding is that Drs. Hamilton and Davis are both agents of the Cooperative, and both were "grossly negligent" in failing to conduct a "biannual salary review" of Plaintiff after February 2003. Plaintiff is correct that both Drs. Hamilton and Davis, at different times, had the authority to conduct Plaintiff's performance reviews. However, Plaintiff has offered no evidence indicating that either Dr. Hamilton or Dr. Davis was responsible for conducting Plaintiff's salary reviews. As provided in her contract, Plaintiff's eligibility for a productivity bonus relied solely on the value of Plaintiff's collected fees. Plaintiff has not established that Dr. Hamilton or Dr. Davis were involved in the calculation of Plaintiff's collected fees. Plaintiff's objections are therefore without merit. The court adopts the Magistrate Judge's recommendation that Drs. Hamilton and Davis's motion for summary judgment be granted as to Plaintiff's Wage Act claim.

Turning to the question of whether the Cooperative may be liable to Plaintiff under the Wage

Act, the court agrees with the Magistrate Judge that Plaintiff has raised a sufficient issue of fact so as to avoid summary judgment. Plaintiff's contract with the Cooperative provided that if her base salary was less than 40% of her net production (collected fees), she was entitled to a productivity bonus equal to the difference between her base salary and such sum. (Thomas Aff. Ex. 1). Plaintiff alleges she has never received the compensation owed her under this agreement. The Cooperative argues that Plaintiff's salary was never below 40% of her net production, and she was therefore never entitled to additional compensation. The Magistrate Judge found discrepancies in the production figures provided by the Cooperative, and denied summary judgment on that ground.

The Cooperative argues that the Magistrate Judge erred in finding discrepancies in its production figures. However, Sonja McClausland, the Cooperative's Chief Financial Officer, recognized the discrepancies herself. In her affidavit, McClausland provided an explanation for the inconsistencies:

> In September 2004, I provided information to legal counsel in responding to discovery requests, including the information set forth in Exhibit B, attached hereto. I attempted at that time to be accurate, but I realized later that I really could not set forth such specific numbers. I explained to legal counsel that we needed to amend those answers. I ran updated numbers as of October 31, 2005, and in November 2005 we served amended answers to interrogatories as set forth in Exhibit C, attached hereto.

(McClausland Aff. Para. 5).

Notwithstanding McClausland's proffered explanation, the Magistrate Judge found these inconsistencies to present a sufficient issue of material fact as to whether Plaintiff is entitled to unpaid productivity bonus compensation. The court agrees. The Cooperative's objections are without merit.

D. Breach of Contract Accompanied by a Fraudulent Act

With respect to Plaintiff's claim for breach of contract accompanied by a fraudulent act, the Magistrate Judge found that: (1) an inference of fraudulent intent could be derived from the evidence that the Cooperative failed to maintain a good faith accounting of Plaintiff's productivity figures, and therefore summary judgment should be denied as to the Cooperative; and (2) Drs. Hamilton and Davis were entitled to summary judgment because Plaintiff had failed to establish that they were personally liable for any fraudulent acts involving the calculations of Plaintiff's productivity bonuses. The court agrees in part. Plaintiff has failed to put forth sufficient evidence to establish an inference of fraudulent intent, and her claim for breach of contract accompanied by a fraudulent act must therefore be dismissed as to the Cooperative as well as Drs. Hamilton and Davis.

To recover for breach of contract accompanied by a fraudulent act, a plaintiff must prove: (1) a breach of contract; (2) fraudulent intent relating to the breach of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach. Shelton v. Oscar Meyer Foods Corp., 459 S.E.2d 851, 857 (S.C. Ct. App. 1995). In the context of a beach of contract claim, "fraud" may assume "so many hues and forms, that courts are compelled to content themselves with comparatively few general rules for its discovery and defeat, and allow the facts and circumstances peculiar to each case to bear heavily upon the conscience and judgment of the court or jury in determining its presence or absence." Conner v. City of Forest Acres, 560 S.E.2d 606, 612 (quoting Sullivan v. Calhoun, 108 S.E. 189, 189 (1921)).

Having thoroughly examined the record, the Magistrate Judge's Report, and the pleadings of the parties, the court finds that the record does not support an inference of fraudulent intent. Although the discrepancies in the Cooperative's production figures may give rise to an inference of

negligence or recklessness, they do not, standing alone, establish an inference of fraud. Plaintiff's claim for breach of contract accompanied by a fraudulent act must therefore be dismissed as to the Cooperative, Dr. Hamilton, and Dr. Davis.[4]

E. Common Law Retaliation

Plaintiff alleges three separate claims for retaliatory discharge brought under South Carolina common law. See Ludwick v. This Minute of South Carolina, 337 S.E.2d 213 (S.C. 1985). Plaintiff claims she was discharged in retaliation for (1) asserting her Wage Act claim; (2) exercising her political and civil rights; and (3) refusing to aid and abet the unlicensed practice of medicine and possible insurance fraud. The Magistrate Judge recommended that the Cooperative's motion for summary judgment be denied as to the first allegation and granted as to the second and third. Further, the Magistrate Judge recommended that Drs. Hamilton and Davis's motion for summary judgment be granted as to all three claims. Having reviewed the record, the Magistrate Judge's report, and the relevant case law, the court finds that Plaintiff lacks standing to bring these claims under the South Carolina common law, and therefore summary judgment should be granted as to all parties.

In Ludwick v. This Minute of Carolina, Inc., the South Carolina Supreme Court recognized an exception to the employment-at-will doctrine, holding that "the public policy exception is invoked

---

[4] Plaintiff has offered no particular factual objections to the Magistrate Judge's conclusion that she failed to raise a genuine issue of fact as to whether Drs. Hamilton and Davis were liable for her breach of contract accompanied by a fraudulent act claim. The court is not obligated to conduct a de novo review of the Magistrate Judge's Report "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano, 687 F.2d at 47.

when an employer requires an at-will employee, as a condition of retaining employment, to violate the law." 337 S.E.2d at 216. This exception has since been applied to claims for retaliatory discharge in violation of the Wage Act. See Evans v. Taylor Made Sandwich Co., 522 S.E.2d 350, 353-54 (S.C. Ct. App. 1999). The Magistrate Judge correctly observed that the Ludwick public policy exception generally does not apply to individuals employed under contract, such as Plaintiff. However, the Magistrate Judge found that the South Carolina Supreme Court recognized an exception to this general rule in Stiles v. American General Life Ins. Co., where the employment contract merely provided for a notice of termination rather than an alternative remedy for wrongful discharge. See 516 S.E.2d 449 (S.C. 1999). The Magistrate Judge found that Plaintiff's employment contract, which provided for a 120 day notice of termination but no alternative remedy for discharge, met this exception. The Cooperative objects to the Magistrate Judge's analysis. The court agrees with the Cooperative that the Stiles exception does not apply to this case.

In Stiles, the plaintiff's contract with his employer was so indefinite that the South Carolina Supreme Court considered him to be an at-will employee for the purposes of the Ludwick analysis. Specifically, the plaintiff's employment contract was limited to no definite term, but provided for termination upon 30 days written notice by either party for any reason. Id. at 450. Having determined the plaintiff to be an at-will employee, the Supreme Court extended Ludwick to apply to at-will employees under such notice provisions. Id. at 451. Stiles did not extend Ludwick to apply to contract employees such as Plaintiff, whose contracts provide for definite terms of employment. Accord Bajalo v. Northwestern Univ., 860 N.E.2d 556 (Ill. Ct. App. 2006). (citing cases). The court declines to adopt the Magistrate Judge's recommendation regarding Plaintiff's

claims for wrongful discharge.[5]

## III.  CONCLUSION

For the reasons stated, the court hereby **grants** Drs. Hamilton and Davis's motion for summary judgment as to all claims.  The court **grants** the Cooperative's motion for summary judgment as to Plaintiff's Title VI claims; her Title VII hostile work environment claim;  her breach of contract accompanied by a fraudulent act claim; and her state common law claims for wrongful discharge.  The court **denies** the Cooperative's motion for summary judgment as to Plaintiff's Title VII retaliation claim and Wage Act claim.

**IT IS SO ORDERED.**

s/Margaret Seymour
Margaret B. Seymour
United States District Judge

October 2, 2007

Columbia, South Carolina

---

[5] Because the court has declined to recognize a retaliatory discharge claim, it need not address Plaintiff's objections to the Magistrate Judge's recommendation that (1) Drs. Hamilton and Davis be dismissed as to her Wage Act retaliation claim, and (2) that her claims for wrongful discharge in violation of public policy be dismissed as to all parties.